ANTHONY WEBER, APPELLEE, V. THOMPSON-BELDEN & COM-
PANY, APPELLANT.

FILED FEBRUARY 2, 1921.   No. 21262.

1. **Master and Servant: NEGLIGENCE OF SERVANT: LIABILITY OF MASTER.**
"To sustain a recovery for injuries caused by being run down by an autuomobile owned by the defendant, the plaintiff must show by a preponderance of the evidence that the person in charge of the machine was the defendant's servant, and was, at the time of the accident, engaged in the master's business or pleasure with the master's knowledge and direction." *Neff v. Brandeis*, 91 Neb. 11.

2. **Evidence: INFERENCES.** "In a civil action, when a fact may be fairly and reasonably inferred from other and all the facts and circumstances proved, it may be taken as established." *Chicago, B. & Q. R. Co. v. Hildebrand*, 42 Neb. 33.

3. **Quære.** When defendant's name is painted on a motor vehicle which caused an accident, there is a presumption of ownership, but whether this sign raises a presumption that the driver was defendant's servant or agent, and whether it is presumed he was engaged in his master's or principal's business or pleasure, *quære*.

4. **Evidence examined, and *held* sufficient to sustain the verdict.**

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Kennedy, Holland, DeLacy & McLaughlin,* for appellant.

*Alvin F. Johnson, contra.*

ALDRICH, J.

This action was brought by Anthony Weber in the court below to recover damages for personal injuries received in a collision with an automobile truck which is alleged to be owned by appellant. This truck it is alleged negligently collided with him at the intersection of Twenty-ninth and Leavenworth streets, in Omaha, while he was walking across the crossing used by pedestrians at the intersection of these streets on December 19, 1917. By reason of such collision plaintiff received serious injuries. On June 7, 1919, the jury returned a verdict for $11,000, from which defendant appeals to this court.

On May 5, 1920, while this appeal was pending, plaintiff died. Upon suggestion of death and a motion for revivor being filed herein, this court revived the action and the judgment rendered therein in the name of Lucy M. Weber, executrix of appellee's estate, who now appears herein as appellee.

To entitle the plaintiff to recovery of damages he must meet the requirements of *Neff v. Brandeis*, 91 Neb. 11. In the beginning of this discussion we note that where one is run down by an automobile, among other things, (1) it must be shown by a preponderance of the evidence that the car was owned by defendant; (2) it must also be shown by a preponderance of the evidence that the person in charge of the machine was defendant's servant, and (3) at the time of the accident was acting with his master's knowledge and direction. The analysis and demonstration which we hope to be able to make will successfully, clearly and justly determine whether the plaintiff should recover, or whether defendant should be entitled to reversal. The above propositions state the true philosophy of the issues and the things of achievement necessary to a correct decision. This record plainly shows that defendant and the truck driver sustained the relation of master and servant. If that is true plaintiff must recover.

It is often impossible to prove the existence of certain situations by positive and direct evidence. When one

faces that situation, he may resort to the doctrine announced in *Union P. R. Co. v. Erickson,* 41 Neb. 1. It is there held in a situation similar to this: "While the facts justifying an inference of negligence must be established by the evidence and their existence, must not be left to the conjecture of a jury, and while ordinarily negligence cannot be presumed merely from the happening of an accident, still facts may be established by circumstances, and the same facts which prove the accident may be circumstances from which the facts justifying an inference of negligence may be found to exist."

In this discussion we also find this court has said: "In a civil action, when a fact may be fairly and reasonably inferred from other and all the facts and circumstances proved, it may be taken as established." *Chicago, B. & Q. R. Co. v. Hildebrand,* 42 Neb. 33. In our discussion we propose to follow these rules as laid down by this court.

On the issue of negligence there can be but little doubt. The truck which caused this accident was being driven recklessly at a speed of between 20 and 25 miles an hour, without either head or tail lights burning, no signal of a horn or otherwise was given, and after running over plaintiff the truck and driver proceeded west on Leavenworth street without stopping. Thus it is clear that the truck driver was negligent; in fact, his running away makes him almost criminally negligent.

The evidence was conflicting in the main, but it is our opinion that the judgment of the court rendered upon the verdict as returned by the jury should not be disturbed. There is ample law and evidence, to sustain the judgment as announced by the district court. The only remaining proposition then is to give sufficient reason for this conclusion.

Is there sufficient evidence of plaintiff to demonstrate that the motor truck causing the injury belonged to the defendant? Was it in charge of his servant acting in the course of his employment at the time of the accident? One thing is undisputed about the ownership of this truck,

namely, that defendant is engaged in general merchandising in the city of Omaha, owns a large and extensive store, employs four motor trucks and truck drivers to deliver its parcels to its customers. Three trucks were used in delivering goods on the day of the accident. These were covered trucks and on the side of each was painted the names of the owners thereof, to wit, "Thompson-Belden & Co.," in plain, large, legible letters. One of the employees driving one of these trucks was named Volz. It was his custom to purchase gasoline for his engine at the filling station located near the southwest corner of Twenty-ninth and Leavenworth streets. There was printed in gold letters in a semicircle on this delivery truck the name Thompson-Belden & Co. These letters on this truck could be plainly seen from the reflected light at the oil station. The delivery truck in question was a dark-colored delivery truck and in general answered the description of the trucks used by defendant. The first person that the witness Clarence Busse talked with the next morning after the accident was Mr. Volz, a servant of defendant company. There seems to be no dispute but what the driver, Volz, was in the employ of defendant, and that on or about the time of the accident he was delivering parcels from defendant's store and was in charge of one of defendant's trucks at the time of the accident. The truck was within sight of several witnesses at the time the accident happened; and, as the truck belonged to defendant and was in charge of the witness Volz, he must have been riding in the truck and guiding and controlling it at the time of the accident. That proposition under all the facts and the circumstances must have made it plain to the jury that Volz was the defendant's driver of this truck at the time of the accident.

It also appears by several witnesses that the defendant's truck, driven by Volz, was in the vicinity of the accident when plaintiff met with his injury. Other witnesses who were near the scene of the accident corroborate and identify other propositions important to learn about this inter-

105 Neb.—39

section. Several witnesses corroborate this witness at the oil station, and his evidence is uncontradicted that he saw plaintiff fall to the ground as the truck passed over him, and said in substance that the delivery truck was dark-colored, with a top on it, and that the intersection was well lighted. The record also discloses further witnesses driving along this particular street who saw this defendant's truck strike plaintiff at the regular crossing of Twenty-ninth and Leavenworth streets. It also appears that the witness Volz did the ignominious thing of running away and seeking to avoid identity after he had run over plaintiff with the delivery truck, but the evidence on the whole is sufficient to identify him as being the genuine party driving the truck at the time of the accident.

The superintendent of defendant's delivery department gave evidence in this case that on the 19th day of December, 1917, defendant was operating only three delivery trucks, that they were covered having a top with doors in the back, and that their trucks and each of them had the name of Thompson-Belden & Co. painted in gold letters about four inches high. The witness Thomas Volz, defendant's truck driver, at the time of the accident was on his route delivering goods. The intersection of Twenty-ninth and Leavenworth streets, where the accident occurred, was in the same general direction from defendant's place of business as the point where one of his deliveries was made, but was a few blocks west.

As to the truth, accuracy and trustworthiness of Volz's testimony, the jury alone had the opportunity to note his general appearance for apparent fairness and candor, his general dependability and credibility under the circumstances. At any rate it seems the jury heard the testimony of several eyewitnesses as to what motor truck struck the plaintiff, and at what particular street intersection it was, and when it was, and who was in charge; the amount and extent of the injuries were afterwards demonstrated. The jury believed this evidence, and though being to some extent in conflict and uncertain as to the identity of the

person or driver operating the truck, nevertheless, under all the evidence and all the circumstances, they believed that the accident was caused by the collision of defendant's truck while it was employed in the delivery of parcels and goods by Thomas Volz in the employment of defendant. It appears in the evidence of Volz that he often filled his car at the Nicholas Oil Company station, that often he filled it in the morning instead of at night, but filled it at night whenever it was low, in order to have it in proper shape for first deliveries next morning. It certainly is significant that the witness Volz, within sight of the accident, hurried from this station almost immediately after the accident happened. The evidence connecting and establishing Volz as the driver in charge of this truck may be determined by circumstances as well as direct testimony, and these circumstances often have the potency to establish facts which import undeniable negligence, evident in this case. It is plain, from all the facts and circumstances, that the truck driver, Thomas Volz, was acting within the scope of his employment at the time of the accident. It is indisputable that at the time Volz was at the Nicholas Oil Company station, and the next morning he was in continuation of the same service as at the time of the accident. It is plain that Volz, if in the automobile truck at the time of the accident, was there as an employee under the authority of defendant, either express or implied. Then it was a *prima facie* case of negligence, and hence the jury were justified in their verdict.

We admit the burden is upon plaintiff to prove agency. The record shows that the witness Volz nearly every day called at the Nicholas oil station to fill his gasoline tank, that it was generally known by the people in charge of the oil station that he was delivering goods for defendant and was driver of the truck that participated in the accident that injured plaintiff. Then if he was engaged in such occupation and was in good health, as it was known, and was in the vicinity of the accident delivering goods, is it not a fair inference when he departed and soon thereafter

collided with plaintiff that he was in the same employment as usual when the accident occurred? If not, why did he try to run away and hide? If he was not in this serious accident, why did he deem it necessary to cover up his identity? and, if he was innocent, why would it have been desirable to conceal his identity? His whole attitude and conduct has been that of some one who had something to hide.

Appellant has cited many authorities and discussed the law, but it is unnecessary for us to review them in detail, because this case is governed by the law of this court, and there are ample authorities cited by plaintiff to dispose of the issues herein. For instance, *Colwell v. Ætna Bottle & Stopper Co.*, 33 R. I. 531, is not decisive of any issue in this case, for in the Rhode Island case it was held that the servant was not acting within the scope of his employment, and defendant was not liable for damages caused by his servant's negligence, while acting for himself. This is foreign to the application herein. There is no evidence or circumstance that imports any such situation. The record proves that the injury was caused by the negligence of the driver, acting as defendant's agent or servant. We admit in this discussion that one who has been injured by an automobile belonging to defendant while being driven by his agent has the burden of proving that the injury was caused by the negligence of defendant's agent while acting in the line of his duty. Is it not true that defendant's agent was driving on this occasion without a light, recklessly, and at the time sought to run away and hide his identity? In *Dearholt Motor Sales Co. v. Merritt*, 133 Md. 323, we find this citation contains the law, but we fail, however, to see how it can be of any benefit to appellant. This case proceeded on the theory that in an automobile accident it was the uncontradicted evidence that the driver of the automobile had never been employed and had taken defendant's car without permission. The situation on that proposition is diametrically opposite to the instant case, and it is of no benefit to appellant, but

rather is against him, and so we might pursue the analysis *ad infinitum* on the citations and still remain in a chaotic unsatisfactory condition as to the real truth.

The amount of damages found by the jury was reasonable, consistent with the evidence, the circumstances, and the facts. Plaintiff, prior to the injury, applied himself very closely, and for many years had not lost. any time, and during several years last past he had increased his earnings to something better than $25 a week. Taking that in connection with his expectancy, he would have earned as much or more than the jury gave him.

Defendant complains of the instructions objected to by him and overruled and given by the court. This position is governed by well-known rules of this court. Instructions to be held erroneous must be construed as a whole. Then if they correctly announce the issue and the evidence and correctly state the law, they are properly considered as correct. The omissions complained of by appellant are completely covered by paragraph 2 of the instructions given by the court. At any rate appellant is not in a position to claim anything for omission. The only instruction tendered and requested by defendant was one for a directed verdict. We have examined the evidence of the physicians and experts who examined plaintiff during his lifetime and have gone over the evidence and all the law propositions raised, and from a survey of all the facts, circumstances and issues presented and discussed, and the instructions of the court, we can conservatively say that the verdict of the jury was justifiable and correct, and taking all the instructions of the court as a whole they are free from errors.

The judgment, then, is

AFFIRMED.

LETTON, J., not being a member of the division which heard this case, did not participate.