WILLIAM F. SCHWERIN ET AL., APPELLEES, V. CHRIS AN-
DERSEN, APPELLANT.

FILED NOVEMBER 17, 1921.    No. 21501.

1. **Appeal:** DIRECTION OF VERDICT. "Where, from the testimony before the jury, different minds might draw different conclusions, it is error to direct a verdict." *Suiter v. Park Nat. Bank,* 35 Neb. 372.

2. **Contracts:** TERMS OF PAROL CONTRACT: QUESTION FOR JURY. Where the evidence as to the terms of an oral contract is conflicting, it is for the jury to pass upon the facts and to determine what the contract was, under proper instructions.

3. ———: DIRECTION OF VERDICT: PREJUDICIAL ERROR. Evidence examined, and *held* sufficient to require the submission of the case

to the jury, and that it was error to direct a verdict for the plaintiffs.

APPEAL from the district court for Pierce county: ANSON A. WELCH, JUDGE. *Reversed.*

*T. J. Doyle, O. S. Spillman, Douglas Cones,* and *P. R. Halligan,* for appellant.

*H. C. Brome* and *M. H. Leamy, contra.*

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and GOSS, District Judges.

CORCORAN, District Judge.

This is an action brought by the plaintiffs, a partnership engaged in the lumber business, to recover from the defendant upon an account for material and labor furnished the defendant for the erection of a garage building at Pierce, Nebraska, in the summer of 1917.

The plaintiffs, in their petition, allege that on or about July 1, 1917, they entered into a verbal contract with the defendant to furnish him the material necessary to construct a brick garage in the city of Pierce at certain prices and with certain profits upon such materials as then agreed upon, and to furnish the necessary labor at cost to them, with no profit upon the labor so furnished. Plaintiffs claim they have performed their contract, and allege that they sold and delivered to defendant building materials to the amount and value of $13,644.67, and that they furnished and paid for the labor employed about the construction of the building, in the sum of $4,709.55, upon which sums plaintiffs aver that defendant paid the sum of $8,000, and no more, and pray judgment for the balance claimed to be due in the sum of $10,354.22, together with interest.

The defendant, for answer, admitted the partnership character of the plaintiffs, and that he had paid plaintiffs the sum of $8,000 upon the contract; and for further answer claimed that about the time alleged by plaintiffs he entered into a verbal contract with plaintiffs for the

erection of his building, in many of the essential features
the same as alleged by plaintiffs, but differing to some
extent as to the scale of profits to be allowed plaintiffs
upon certain articles, and pleaded an entirely different
agreement from that set up by plaintiffs as to the con-
struction of the building. The petition of the plaintiffs
simply disclosed an ordinary transaction for the sale and
delivery of building materials, for the sale of which they
were engaged in business as retail dealers. The answer
of the defendant sets forth the claim that he entered into
a contract with plaintiffs as independent contractors for
the construction of his building complete at a stipulated
scale of prices. Under this contract, as claimed by de-
fendant, the building was to be but one story; and that
when the building had been constructed and nearly com-
pleted as a one-story building he was induced by one of
the plaintiffs to add a second story. He claims that he
was advised by the plaintiff firm that the one-story build-
ing would cost him in the neighborhood of $8,000, and
that considerable negotiation ensued as to the cost of the
second story, and that different propositions were made
by the plaintiff firm as to what they would construct it
for, and defendant claims that he finally agreed with the
plaintiffs to add the additional story to the building at
an added cost of $4,000; the whole building to cost com-
pleted the sum of $12,000, and no more; and further
claims that he was guaranteed by the plaintiff firm that
the building would cost no more than $12,000.

The answer further tenders two other issues: First,
faulty construction of the building by plaintiffs; and,
second, negligence by plaintiffs in allowing the building
to be destroyed by fire. A general denial of all other mat-
ters is also included in the answer; the defendant plead-
ing a counterclaim for the $8,000 paid plaintiffs and for
damages. The reply substantially denied the allegations
of defendant's answer.

For a trial of the issues as tendered by the pleadings a
jury was impaneled, and at the conclusion of the trial the

court directed the jury to return a verdict for the plaintiffs for substantially the full amount of the claim. This is assigned as error, and after the overruling of the defendant's motion for a new trial and the entry of judgment upon the verdict the defendant brings the case to this court upon appeal.

The record of the trial, which consumed several days, is very voluminous, but from the view of the whole case entertained by this court an extended discussion of the evidence could serve no useful purpose. For the purpose of this review but little attention need be paid to the claim of the defendant as to the faulty construction of the building or the negligence attributed to the plaintiffs in connection with the fire which destroyed the building on January 16, 1918. It appears from the evidence that the plaintiffs furnished the material and employed labor and commenced the construction shortly after entering into whatever arrangement was made between the parties. The work proceeded until the following January, when the lower story was completed and was being occupied by the defendant, who had moved at least part of his stock into that part of the building, and the workmen were engaged upon the second story finishing a large hall which occupied the greater part of the upper story, and but a few days' work remained to be done when, as before stated, the building caught fire in the nighttime and was totally destroyed.

The controlling question in this case is the action of the trial court in directing the verdict of the jury. To determine this question involves a consideration of the evidence as to the contract actually made by the parties and what was afterwards done in pursuance thereto. Upon this important question there is a sharp conflict in the evidence. Both of the plaintiffs active in the management of the firm's business, Samuel W. and Daniel F. Schwerin, testified substantially to the facts pleaded in their petition. This testimony was to the effect that they sold the material and furnished the labor in the ordinary

routine of their business as dealers in that character of merchandise, and deny any agreement upon their part to undertake the construction of the building as independent contractors. They also deny *in toto* the claim of the defendant that they ever agreed to finish the building for any stipulated sum.

The defendant Andersen, upon the other hand, testified with reference to his conversation with Daniel F. Schwerin, one of the plaintiffs, and claims that this conversation took place about the time they were ready to begin work upon the second story, if it was to be built. The conversation claimed by the defendant will be found commencing upon page 411 of the bill of exceptions, from which we quote:

"Q. Tell what he said when he told you the second story would cost $2,800. A. He told me he could get me a bunch of fellows to give me a lease on that for five years for $25 a month. Q. What further talk did you have with him, if any? A. Twenty-eight hundred dollars looked cheap to me and I said, 'Are you sure the cost will not exceed $2,800 for that second story?' And he said he would figure it up once more, which he did, or he told me he did anyway, and come back and told me that it would be $3,500. And I told him if that was true I would have to have $30 a month rent for it. He had already been around and seen different fellows and had them agree to pay $25 a month, and he went around again and got them to agree to pay $30 a month. Well, I wanted to be dead sure what this was going to cost, and I told him I didn't want him to be making any mistake on that, and then he figured it the third time for me. Q. What did he say after that? A. He told me that he would guarantee me that the second story complete would not cost me to exceed $4,000 and that he was sure he could hold it some under that. Then I raised the rent to $35 a month, and he went around and got the fellows to agree to that. He said he would guarantee the building would not cost me to exceed $12,000 complete and he was quite certain he

could hold it under that.  Q.  Up to the time he told you that, had you told him to go ahead and put the second story on?  A.  No, sir; I had not.  Q.  When he told you that he would guarantee that the building would not cost to exceed $12,000, tell the jury whether or not you relied on that statement?  A.  Yes, sir; I did.  Q.  Tell the jury whether or not you were induced by that statement to go on and put on a second story?  A.  Yes; I was.  *  *  *  Q.  After he guaranteed to you that the completed building would not cost to exceed $12,000, what did you say to him with reference to going ahead and building the second story?  A.  I told him to go ahead and put it on."

This testimony in support of the defendant's answer tendered an issue of fact.  The conflict between the two theories of the case is clear and radical.  The question presented for decision is whether, under this state of the record, the trial court was warranted in directing the verdict.  Counsel for plaintiffs, in the brief, attempt to brush this testimony aside with the assertion that Daniel F. Schwerin could not bind the firm by making such an agreement.  This argument is ingenious, but not convincing.  It is a familiar rule that acts of one partner acting for the firm, and within the scope of the partnership business, bind the partnership.    If Daniel F. Schwerin made the contract, as testified to by the defendant, then the plaintiffs as partners are bound thereby.  The important question is, did he make it?  What inference is to be drawn from the facts appearing in the evidence?  Where inferences are to be drawn from facts it is the province of the jury to draw those inferences.

"Where, from the testimony before the jury, different minds might draw different conclusions, it is error to direct a verdict."  *Suiter v. Park Nat. Bank,* 35 Neb. 372.

"Where the evidence as to the terms of an oral contract is conflicting, or the meaning doubtful, it is for the jury to ascertain the intention of the parties and to determine what the contract was, under proper instructions."  13 C. J. 787, sec. 998.

These. rules'are supported by an unbroken. line of de-cisions by this court, and, in fact, no other rule has ever prevailed in this jurisdiction. It is argued in the able brief of counsel for plaintiffs and at the bar that, on ac-count of the numerous items in the account, it would not be possible for the jurors.to carry the figures in their minds and arrive at a correct computation of the amount due, and that therefore it was necessary to direct the verdict. This argument might well be addressed to op-posing counsel before the trial as a reason why a trial by jury should be waived, but it.affords no logical justifi-cation for invading the province of.the jury after the case had been tried to them.

Counsel also devote a large part of their brief to the dis-cussion of the question as to whether the contract was entire or divisible, and many authorities are cited in sup-port of the several contentions. This branch of the case has not been considered by the court, as the conclusion reached renders such a consideration unprofitable and un-necessary. The situation is similar with reference to de-fendant's claim as set forth in his counterclaim. As a retrial of the case will be necessary, no good purpose could be served by further discussion of these several features of the controversy.

The right of the defendant to have his contention and his theory of the contract submitted to the jury is a sub-stantial right of which he was deprived by the action of the court in directing the verdict. This was clearly an error, for which the judgment must be reversed and the cause remanded for further proceedings in accordance with law. REVERSED.