CLARENCE P. BAINTER, APPELLANT, V. LEO APPEL ET AL., APPELLEES.

FILED NOVEMBER 10, 1932. No. 28276.

*Baker, Lower & Sheehan,* for appellant.

*Ralph J. Nickerson* and *Crossman, Munger & Barton,* contra.

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This was originally an action at law instituted in the district court for Sarpy county by Clarence P. Bainter, as plaintiff, against Leo Appel and Western Asphalt Paving Corporation, as defendants. Plaintiff sought a recovery from the defendants for damages to his person and property alleged to have been caused by the negligence of the defendants in the operation of a truck on and over "Old U. S. Highway 38," resulting in a collision with plaintiff's automobile on August 5, 1931, at a point on that public highway between three and four miles south of Gretna, Nebraska.

There was a trial to a jury. At the close of plaintiff's evidence the trial court sustained the separate motions of defendants for a directed verdict in their behalf, and dismissed plaintiff's action. This action of the district court was predicated upon the proposition that plaintiff's evidence was insufficient to establish a cause of action against either defendant, and disclosed contributory negligence on the part of the plaintiff in a degree sufficient to defeat a recovery by him. From the judgment thus entered, and the order of the district court overruling his motion for a new trial, the plaintiff appeals.

In view of this record, it is obvious that the correctness of the determination of the trial court is to be tested by the following established principles: (a) "If there be any testimony before the jury, by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it, and direct a verdict against him." *Grant v. Cropsey*, 8 Neb. 205. See, also, *Hunt v. State Ins. Co.*, 66 Neb. 125; *Schmidt v. Williamsburgh City Fire Ins. Co.*, 95 Neb. 43. (b) "In reviewing the action of a trial court in directing a verdict, this court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish." *Preston v. Stover*, 70 Neb. 632; *Kepler v. Chicago, St. P., M. & O. R. Co.*, 111 Neb. 273. (c) "Where, from the testimony before the

jury, different minds might draw different conclusions, it is error to direct a verdict." *Suiter v. Park Nat. Bank,* 35 Neb. 372; *Schwerin v. Andersen,* 107 Neb. 138.

We premise our discussion of this appeal with the observation that the fact of the collision, and the damages suffered therefrom by the plaintiff, must in this proceeding be taken as uncontroverted. The determinative evidence, in view of the issues necessarily determined by the trial court in directing a verdict for defendants at the close of plaintiff's evidence, is therefore restricted to the facts and circumstances appearing in the record which support or disprove inferences of negligence in the transaction on the part of the defendant, or which tend to establish contributive negligence on the part of the plaintiff.

It may be said that the public highway referred to in the evidence as "old thirty-eight," and on which this collision occurred, at the scene of the accident was laid out and constructed in a general east and west direction. A short distance east of the place of collision "old thirty-eight" was intersected by the new public highway, then under construction, and which extended from the southwest to the northeast. These roads will hereafter be referred to as the "new highway" and the "old thirty-eight." This court will take judicial notice that measured between their lateral boundaries each of these public highways was not less than 66 feet in width; and also that the paved surface of the "new highway" and the graded and graveled portion of "old thirty-eight" occupied the central portion of the respective highways in which situated. It also appears that at the time of the accident the paving of the "new highway" (including a portion of the intersection with "old thirty-eight") had been in part completed, and for its protection had been covered with soil. The "new highway" was then in use, at least by trucks engaged in construction work thereon. "Old thirty-eight" from this intersection, inclusive and westerly therefrom, was then in use by the public generally.

The testimony of defendant Appel, whose truck collided with plaintiff's automobile, testifying as plaintiff's witness, is, in substance, that on August 5, 1931, at approximately 4:30 p. m. he was employed in personally operating this truck and then conveying a load of sand, gravel and cement, the property of the Western Asphalt Paving Corporation, over "old thirty-eight" from "Melia, our plant, to the mixer." This material was intended for use in paving the "new highway."

Plaintiff testified in substance as follows: On the day of the accident he, with five others in his Graham Paige, of which he was the driver, were traveling from Council Bluffs, Iowa, via Omaha and Lincoln, to Fairbury, Nebraska. At 4:30 on that day this Graham Paige, with plaintiff at the wheel, traveling west over "old thirty-eight," was approaching the junction of the two public highways already referred to. At this place "two cars passed me * * * going a pretty good rate of speed." "They kicked up some dust" and caused plaintiff "to slow down." As he "pulled up" in the intersection and had just started to cross the pavement, "something whizzed by" traveling on the "new highway" and created a big cloud of dust at this point. The dust came up "right in front of my car." He was "into it before he knew what had happened." The speed of his car, when crossing the intersection, was from five to seven miles an hour. "I couldn't stop on the highway (intersection) so I just drove slowly off." While he was in the cloud of dust he could see a little, though his view was evidently greatly curtailed. As he was driving slowly along on his right-hand side of the road (north half) he saw "this truck coming out of the dust." He then knew "there was going to be a head-on collision" and applied his brakes. He almost came to a stop before the impact; he had in fact put on his brakes while passing through the cloud of dust so the car was moving slowly when the approaching truck was first discovered. Plaintiff testifies that the actual impact of the collision with the Appel truck took place probably fifty or sixty feet

west of the intersection, resulting in the practical destruction of his automobile. Other disinterested witnesses place this point of actual impact as "fifteen feet or so west of the intersection," and one witness says on this topic: "I should judge fifteen or twenty feet west of the center of the intersection." All witnesses agree that plaintiff's car in passing through the dust cloud was at all times on the "right side" or north half of "old thirty-eight;" that the collision was head-on, and that both cars were then north of the center line of "old thirty-eight." Indeed, here the two colliding vehicles stood after the collision, with their front wheels locked together, the truck facing eastward and the Graham Paige facing the west. There is evidence that defendant's truck had been traveling over the north half of this highway to the eastward for some distance west of the point where the collision occurred. There is no evidence that this was due to accident, or in any manner to the presence of the dust cloud, but the facts elicited by defendants' attorney on cross-examination support the inference that the driver of the truck was intentionally operating it over the north half of "old thirty-eight" at the time of impact, and had been for a period of time prior thereto, and there are no facts appearing in the record which would support the inference that the south half of "old thirty-eight" was here "impracticable to travel," "obstructed," or "impassable."

The date of this accident, August 5, 1931, invites our attention to the fact that the legislature of 1931 at its forty-seventh session enacted chapter 110, Laws 1931, entitled "An act relating to motor vehicles and regulating the operation of vehicles on the highways," etc. This act was approved by the executive May 7, 1931. The forty-seventh session adjourned *sine die* on May 2, 1931. This enactment, having been adopted without an emergency clause, notwithstanding the date of approval by the executive, took effect August 3 following, and its provisions, so far as applicable to the subject-matter involved in this litigation, are controlling. Const. art. III, sec. 27; *McGinn*

*v. State,* 46 Neb. 427; *State v. City of Kearney,* 49 Neb. 325.

This legislation evidences the substantial adoption by Nebraska of the provisions of the "Uniform act regulating the operation of vehicles on highways" as recommended and approved by the commissioners on uniform state laws in 1926, and which since that time has been, in effect, adopted by the legislatures of seventeen of the states of the Federal Union, in addition to our own. Section 59 of this chapter 110 provides: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact similar legislation." In the construction of similar enactments adopted for the purpose of securing uniformity and certainty in certain laws throughout this nation, this jurisdiction is committed to the view that each of such statutes should be so construed, in the light of the cardinal principles of the act itself, as to give effect to this design. *Peter v. Finzer,* 116 Neb. 380; *International Milling Co. v. North Platte Flour Mills,* 119 Neb. 325. See, also, *Commercial Nat. Bank v. Canal-Louisiana Bank & Trust Co.,* 239 U. S. 520.

This law of 1931 does not in terms repeal or amend section 39-1001, Comp. St. 1929, providing: "Whenever any persons, traveling with any carriages, shall meet on any road in this state, the persons so meeting shall seasonably turn their carriages to the right of the center of the road, so as to permit each to pass without interfering or interrupting," etc. This enactment of 1931 embraces, however, the following additional requirements and includes certain definitions which are applicable to the situation disclosed by the evidence referred to, viz.: "The following words and phrases when used in this act shall for the purpose of this act have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning: (a) Motor Vehicles. Every vehicle as herein defined, which is self-propelled. * * * (e) Highway.

Every way or place of whatever nature open to the use of the public, as a matter of right for the purposes of vehicular travel. * * * (f) Private Road or Driveway. Every road or driveway not open to the use of the public for purposes of vehicular travel. (g) Intersection. The area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other. * * * (i) Right of Way. The privilege of the immediate use of the highway." Comp. St. Supp. 1931, sec. 39-1132.

"Upon all highways of sufficient width, except upon one way streets, the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway." Comp. St. Supp. 1931, sec. 39-1139.

"In crossing an intersection of highways * * * the driver of a vehicle shall at all times cause such vehicle to travel on the right half of the highway unless such right half is obstructed or impassable." Comp. St. Supp. 1931, sec. 39-1140.

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible." Comp. St. Supp. 1931, sec. 39-1141.

"(a) The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety." Comp. St. Supp. 1931, sec. 39-1143.

"(a) Except as otherwise provided in this section, the driver of a vehicle intending to turn to the right at an intersection shall approach such intersection in the lane

for traffic nearest to the right-hand side of the highway and in turning shall keep as closely as practicable to the right-hand curb or edge of the highway, and when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left. For the purpose of this section, the center of the intersection shall mean the meeting point of the medial lines of the highways intersecting one another." Comp. St. Supp. 1931, sec. 39-1146.

"Except in those instances where a lower speed is specified in this act, it shall be *prima facie* lawful for the driver of a vehicle to drive the same at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful. * * * 3. Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all highways entering such intersection for a distance of two hundred feet from such intersection." Comp. St. Supp. 1931, sec. 39-1135.

So, also, we are required to take judicial notice of the provisions of the official state highway rules and regulations (1930) as formulated by the department of public works, pursuant to section 39-1416, Comp. St. 1929. 7 Ency. of Evi. 990. These are to be construed as in addition to the Nebraska statutes rather than in explanation or interpretation thereof. This court has recognized the validity of powers thus exercised by the department of public works. *Trussell v. Ferguson,* 122 Neb. 82. Paragraph (r) of section 13 of these rules and regulations (page 13) is: "A vehicle shall not stop within an * * * intersection."

It thus appears that plaintiff in continuing the movement of his automobile westward on the right or north half of the highway after being enveloped by a cloud of dust which obstructed his view, at a speed of from five to eight miles an hour, was not only well within the express statutory limitation, but was then proceeding in strict obedience to the commands of the law. No "lower speed is specified in this act," and the record is barren of facts from which it may be inferred that this speed was then unsafe.

Defendant Appel's contention is that when plaintiff's view became obstructed by the dust cloud in the intersection he should have stopped where he was, or blown his horn, or turned on his lights. The terms of the statutes and regulations already quoted wholly fail to support this contention. Plaintiff was not required to stop, or blow his horn, or turn on his lights, but the statute contemplates only that he proceed on his right half of the highway at a rate of speed not in excess of fifteen miles an hour, and the "regulations," as we have noted, expressly denied to him the right to stop in the intersection.

Neither has the rule that "it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps" any application to the facts of the instant case. This court has properly applied the rule quoted in cases where the collision was between a moving automobile and an object which relative to the automobile was stationary. *Roth v. Blomquist*, 117 Neb. 444. But to apply it to approaching automobiles colliding with each other would violate the very reason by which the rule is supported. Indeed, its strict observance by both drivers in the case supposed would not avoid the collision.

In the present case the car of plaintiff was correctly placed and at the time of the impact, as well as prior thereto, was traveling in a lawful manner where and as the terms of this enactment directed. Plaintiff, then, as

to the north half of this highway, had the exclusive statutory right of way as against eastbound traffic thereon. This being true, plaintiff, as driver of his car, had the right to assume that no one, in violation of the express commands of this legislation, would pass over the center line of this highway with his motor vehicle, travel eastward on the north half thereof, project his car into a cloud of dust on plaintiff's own side of the road, and strike him. The fact that the accident occurred in this manner constitutes ample evidence to go to the jury on the question of defendant Appel's negligence, and fully sustains the inference that plaintiff was wholly free from contributory negligence. *Crowe v. O'Rourke,* 146 Wash. 74; *Lawrence v. Bartling & Dull Co.,* 255 Mich. 580; *Tomlinson v. Clement Bros.,* 130 Me. 189. The district court erred, therefore, in directing a verdict for the defendant Appel.

As to the defendant Western Asphalt Paving Corporation, it may be said that the sole evidence connecting it with the transaction is the evidence of witness Appel already set out. Under the issues as made by the pleadings, to sustain a recovery for injuries occasioned by the operation of the Appel truck, the burden was imposed on the plaintiff to show by a preponderance of the evidence that Appel, who was in charge of and operating the machine occasioning the damages, was the Western Asphalt Paving Corporation's servant, and was at this time engaged in his master's business or pleasure with the master's knowledge and direction. *Neff v. Brandeis,* 91 Neb. 11; *Weber v. Thompson-Belden & Co.,* 105 Neb. 606.

As the evidence in the record wholly fails to prove the relation of master and servant as existing between Appel and the Western Asphalt Paving Corporation, the action of the trial court in directing a verdict in favor of the latter is approved. As to defendant Appel, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion; as to defendant Western Asphalt Paving Corporation, the judgment is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.