ORVILLE D. BEEMER, APPELLANT, V. GEORGE E. HAGER, APPELLEE.

FILED JUNE 1, 1934. No. 28632.

*O. B. Clark,* for appellant.

*C. J. Campbell, Frank A. Peterson* and *T. F. A. Williams, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and HORTH, District Judge.

HORTH, District Judge.

The appellant, as plaintiff in the district court, and the owner of the fee title to a house and lot in the city of Lincoln, Nebraska, subject only to a life estate therein in one Harriet Randolph, prosecutes this action against George E. Hager, an attorney-at-law of Lincoln, Nebraska, seeking to recover damages from appellee upon a charge that the appellee, together with one John Randolph and Luvilla Stone, unlawfully and maliciously entered into a conspiracy to cheat and defraud appellant of said real estate.

The appellee denies the charge of appellant, pleads the statute of limitations and other matters in avoidance.

Hereafter the parties will be referred to as they appeared in the district court.

At the close of the testimony, the defendant moved for an instructed verdict, demurring to the evidence and to the petition as not stating a cause of action. The trial court sustained the motion, and gave a peremptory instruction in favor of the defendant. The jury, accordingly, returned a verdict for the defendant and judgment was entered dismissing plaintiff's petition. The remarks of the trial court, in passing upon defendant's motion, appear as a part of the bill of exceptions and, from the language used, it is patent that the motion was sustained upon the ground that the evidence does not warrant a recovery by

plaintiff against the defendant. Plaintiff's motion for a new trial having been overruled, he prosecutes this appeal, urging that the trial court erred: (1) In directing a verdict for defendant; (2) in permitting defendant to amend his answer setting up the defense of the statute of limitations, after the issues were joined and the evidence adduced; (3) in withdrawing from the jury the question of fact upon the issues joined, and, (4) in overruling plaintiff's motion for a new trial.

1.  The undisputed facts are that Harriet Randolph, the owner of the life estate in the real estate mentioned, failed to pay the general taxes and special paving assessments levied and assessed against said real estate for the year 1922, and said taxes and special assessments becoming delinquent were sold by the county treasurer of Lancaster county, and the owner of the tax sale certificate subsequently paid thereunder the general taxes and special paving assessments assessed and levied against said real estate for the years 1923 to 1926, inclusive, and on June 17, 1927, there was due upon said tax sale certificate the sum of $430.80 and on said date the defendant gave his check for that amount to the agent of the owner of such tax sale certificate and the owner indorsed the certificate, in blank, and delivered the same to the defendant, who on the following day mailed the same to Earle V. Ticknor, together with a letter from defendant reading:

"June 18, 1927.

"Earle V. Ticknor, Atty.,
"Omaha, Nebraska.

"My dear Ticknor:
   "In re Harriet Randolph tax matter.
   "I am pleased to advise you that the check given us by your clients, Randolph Brothers, has been cleared, and we have taken up the county treasurer's certificate of tax sale, as per your request, and am inclosing you herewith the same to wit, #1313 for $60.90 dated November 5, 1923. The amount paid was $430.80, the difference between the

face of the certificate and the amount paid representing taxes which were paid subsequently upon the certificate and interest thereon.

"We have also collected $35 upon the rent, and have promise of payment of back rent as outlined in our recent letter."

It is also undisputed that on or about November 23, 1927, the defendant accepted employment from Luvilla Stone for the purpose of foreclosing the lien of said tax sale certificate against real estate; that foreclosure proceedings were brought by the defendant as attorney for said Luvilla Stone against Orville D. Beemer, remainderman, and Harriet Randolph, life tenant; a decree foreclosing said tax sale certificate upon said house and lot was entered in said action, a sale of the real estate had thereunder, and Luvilla Stone was the purchaser at said sale; that said sale was confirmed by the court and the sheriff delivered to the said Luvilla Stone a deed to said real estate; that by reason of certain jurisdictional defects in the proceedings, said decree of foreclosure, the sale thereunder and the sheriff's deed were set aside and held for naught.

Aside from these undisputed facts, plaintiff contends that, on or about the 8th day of June, 1927, Harriet Randolph, the owner of the life estate in said house and lot, employed the defendant, as her duly authorized attorney at law, to redeem said real estate from such tax sale certificate and for that purpose she paid to the defendant the sum of $430.80; that the defendant, well knowing these facts, unlawfully and maliciously entered into a conspiracy with one John Randolph and Luvilla Stone to cheat and defraud plaintiff of his title to said real estate and, in pursuance to said conspiracy, defendant failed, neglected and refused to redeem said real estate from said taxes but paid the $430.80 to the owner of said tax sale certificate and procured said owner to indorse the same, in blank, and to deliver such certificate to the defendant, and that, in pursuance to said unlawful conspiracy to cheat and defraud plaintiff, defendant unlawfully delivered said tax

sale certificate to Luvilla Stone, and that on or about November 23, 1927, defendant, while employed as attorney by said Harriet Randolph, accepted employment from Luvilla Stone for the purpose of foreclosing the lien of said tax sale certificate; that the defendant knowingly, maliciously and wilfully prosecuted said foreclosure to decree, purporting to bar plaintiff from all right, title and interest in and to said real estate and caused said real estate to be sold at sheriff's sale, purchased the same on behalf of Luvilla Stone, and the sheriff issued and delivered to defendant a deed purporting to convey said premises to Luvilla Stone and caused said deed to be recorded in the office of the register of deeds of Lancaster county, all of which cast a cloud upon plaintiff's title to said real estate, and he was compelled to expend the sum of $792.70 in attorney's fees, traveling expenses and other items of expenditure in removing said cloud, to plaintiff's damage in the sum of $792.70.

As is said in *Bainter v. Appel,* 124 Neb. 40, the correctness of the determination of the trial court is to be tested by the following established principles: "(a) 'If there be any testimony before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it, and direct a verdict against him.' * * * (b) 'In reviewing the action of a trial court in directing a verdict, this court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish.' * * * (c) 'Where, from the testimony before the jury, different minds might draw different conclusions, it is error to direct a verdict.' "

The record in this case contains more than 600 pages of testimony, and for the purpose of determining whether or not the evidence brings the plaintiff within the protection of these principles, it has been read and reread.

In support of his contention that the trial court erred in instructing the jury to return a verdict for the defendant, plaintiff's counsel calls our attention to two items of testi-

mony. The first, a copy of a page from the account ledger of the defendant, reads as follows:

"HARRIET RANDOLPH

| 1927 | | | | | 1927 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| June 17 | pd for tax ctf. | | 55 | 430.80 | June 8 | taxes | | 53 | 430.80 |
| July 27 | ck to Ticknor | | 69 | 70.00 | 11 | Rent, Beemer | | 53 | 35.00 |
| 27 | fees retained | | 69 | 25.00 | July 22 | " | " | 71 | 35.00 |
| Sept.14 | fees " | | 89 | 20.00 | 29 | " | " | 71 | 15.00 |
| 14 | check to Ticknor | | 89 | 75.00 | 29 | " | " | 71 | 10.00 |
| Nov. 15 | fees to Randolph | | 117 | 22.50 | Aug.20 | " | " | 76 | 35.00 |
| 15 | check to " | | 117 | 70.00 | 29 | " | " | 78 | 25.00 |
| 15 | Costs retained | | | | Sept.16 | " | Sept. | 84 | 35.00 |
| | Stone | | 117 | 12.50 | 28 | " | back | 90 | 35.00 |
| | | | | | Oct. 19 | " | Oct. | 103 | 35.00 |
| | | | | | 28 | back | rent | 105 | 35.00" |

"STONE, LUVILLA

| 1927 | | | | 1927 | | | | |
|---|---|---|---|---|---|---|---|---|
| Nov. 23 | flg. ptn. | 119 | 6.50 | Nov. 15 | costs rec'd | | 117 | 12.50 |
| Dec. 24 | pub. fees | 141 | 17.25 | 1928 | | | | |
| Jan. 6 | proof publi. | 143 | .50 | Mar. 14 | " | " | 180 | 60.52 |
| Febr. 3 | motion | 161 | .50 | 14 | fees | | 180 | 100.00 |
| Mar. 2 | publication | 174 | 12.85 | | | | | |
| 8 | order sale | 176 | 5.00 | | | | | |
| 14 | balance costs | 180 | 29.42 | | | | | |
| 14 | filing deed | 180 | 1.00 | | | | | |
| May 2 | fees | 200 | 100.00 | | | | | |
| 1930 | | | | 1930 | | | | |
| Febr.20 | bus fare Lyons | 148 | 7.00 | Jan. 30 | fees | | 139 | 50.00 |
| | lunch " | " | .50 | Mar. 5 | check | | 159 | 160.00" |
| 26 | fees | 149 | 200.00 | | | | | |
| Mar. 5 | flg. answer | 154 | 2.50 | | | | | |

And attention is directed to two questions propounded to and the answers given by the witness Eva Hannan, the stenographer and bookkeeper for the defendant who made the entries in the ledger: "Q. I think you said they were true and correct? A. To the best of my ability. * * * Q. And were made as a part of the business of your employer? A. Yes, sir."

And the second item is the following questions propounded to and the answers given by the witness, Dean Beemer: "Q. What did you say and what did Mr. Hager say? A. I asked Mr. Hager if the taxes on the property

had been taken care of and he said that they had. * * * Q. Did you have any further conversation with him about the taxes? A. Yes. * * * Q. You may state the conversation. A. I told him I was glad the taxes had been paid because it would take a load off of Aunt Harriet's mind. He said, 'Yes; the taxes are paid.'"

Plaintiff also identified and introduced in evidence exhibit 27, being an entry appearing on page 53 of the book of account of the defendant, reading as follows:

"June, 1927

"8 Harriet Randolph, Spencer, Iowa (Earle V. Ticknor, Atty. Omaha) received check of Randolph Bros. for payment of taxes $430.80."

A natural inference to be drawn from this evidence, and the one most favorable to the plaintiff, is that the defendant received from Harriet Randolph, at the hands of Earle V. Ticknor, attorney of Omaha, the check of Randolph Brothers for $430.80 with which to pay the taxes and special assessments upon the house and lot in Lincoln in which the said Harriet Randolph was the owner of a life estate and the plaintiff was the owner of the remainder in fee, and when read in connection with defendant's letter to Earle V. Ticknor, *ante*, it tends to establish the allegations of plaintiff's petition: "That on or about the 8th day of June, 1927, there then being due upon said tax sale certificate above mentioned the taxes and special assessments including accumulated interest, as above mentioned, the sum of $430.80, and the said Thomas W. Moffitt holding a lien on said premises for said amount by reason of said tax certificate, the said Harriet Randolph employed the defendant, George E. Hager, as her duly authorized attorney at law to pay said amount due and to redeem said property from said tax sale certificate and have said lien upon said property canceled and annulled and to collect the rents and profits arising from said property; and at said time last mentioned the said Harriet Randolph paid to the defendant the sum of $430.80 with which to redeem said premises and cancel said lien above mentioned."

Upon his direct examination, when called to testify in his own behalf, the defendant was asked: "Q. Mr. Hager, did you have any conversation with reference to these matters with Mr. Ticknor and Mr. Randolph at that time, the 8th of June, 1927?" The defendant answered: "A. I did. * * * Mr. Ticknor and Mr. Randolph came into my office and said they had two items of business that they would like to have me assist Mr. Ticknor in handling. Mr. Ticknor was the attorney from Omaha. Ticknor explained further that he was a relative of John Randolph and he stated he was a relative of Harriet Randolph and he was also a relative of Mrs. Stone and Orville D. Beemer. * * * Mr. Ticknor stated he had been trying for a number of months to collect rent due from Dean Beemer to Harriet Randolph and he had not made very much headway at it. He stated that Dean Beemer was occupying this property, the life interest of which belonged to Harriet Randolph and she was entitled to the rent and that Orville D. Beemer was the remainderman. He stated to me that because of the fact Dean Beemer had not paid the rents, and they were at that time some $300 or $400 behind, Harriet Randolph had been unable to pay the taxes. He stated that this life interest in this property was the only property that Harriet Randolph had and being unable to collect the rents from Dean Beemer she had been unable to pay the taxes. He said the taxes had been sold to a man by the name of Moffitt. He further stated that the time within which the tax sale certificate might be foreclosed was drawing close to the end, I think he said four or five months, something like that, and that something would have to be done or else they feared that Mr. Moffitt, who held the tax sale certificate, would foreclose it and take the title to the property and that would take away every bit of income that Harriet Randolph had, every possibility of her receiving any income for living expenses. He told me that Harriet Randolph was living at that time at Spencer, Iowa, with Mrs. Stone; that Mrs. Stone was a sister of John Randolph. He asked me if I knew of any

reason why Luvilla Stone could not advance of her own money, buy this tax sale certificate, take an assignment of it and foreclose it in her own name so as to save this property and have something out of which they could support the old lady, Harriet Randolph. He said she had no home of her own and had lived about with various relatives, most of whom were very poor and could not furnish her very much to live upon, and in order to keep the property from passing out of the family entirely, she wanted to know if I knew of any reason why she couldn't pay this and foreclose it. I told them I could see no reason, if she had the money and wanted to invest it in this tax sale certificate, I told them in my opinion she had a perfect right to do so. They told me they had corresponded with Orville D. Beemer and that they had told him of the situation. They told me he had not answered their letters and that he had done nothing about the tax matter or helping take care of the back taxes or special assessments. After discussing the matter in that way for some time they decided that—they told me that Mrs. Stone had authorized them, in case they thought this was the proper thing to do to turn the money over to me and have me buy the tax sale certificate for her. I then telephoned to Mr. Walter Anderson, who represented Mr. Moffitt, and asked him the exact amount necessary to take over and buy the tax sale certificate. Mr. Randolph then wrote a check."

A reasonable inference to be drawn from this testimony is that Mr. Ticknor and Mr. Randolph came to the defendant in behalf of Harriet Randolph and for the purpose of protecting her rights in the house and lot, and that the outstanding purpose in having Luvilla Stone foreclose the tax sale certificate was to deprive the plaintiff of his right, title and interest in and to such real estate. It would have been a useless thing for Harriet Randolph to foreclose the tax sale certificate for the purpose of protecting her title to the real estate. This could have been accomplished by merely filing the tax sale certificate with the

county treasurer and securing his redemption certificate. Giving this testimony of Mr. Hager the construction most favorable to the plaintiff, and assuming, as we do, that the $430.80 paid by the defendant to the owner of the tax sale certificate was money belonging to Harriet Randolph, it tends to establish the further contention of plaintiff that, on or about the 8th day of June, 1927, defendant, with full knowledge of the facts, unlawfully entered into a conspiracy with John Randolph and Luvilla Stone to cheat and defraud plaintiff of his title to said house and lot and that plaintiff was damaged thereby.

In determining whether the trial court erred in instructing the jury to return a verdict in favor of the defendant, this court is not called upon to decide whether the plaintiff sustained the burden of proof which rested upon him. The defendant, by moving for an instructed verdict, waived this requirement upon the part of the plaintiff, and, in effect, said there was no competent evidence before the jury from which a finding in favor of the plaintiff could be upheld. Regarding as conclusively established every fact favorable to the plaintiff, which the evidence proves or tends to establish, we believe that different minds might reasonably draw different conclusions therefrom, and that the trial court erred in sustaining defendant's motion for an instructed verdict and in overruling plaintiff's motion for a new trial.

2. The trial court did not abuse its discretion in permitting the defendant to amend his answer.

The judgment of the district court is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED.