ROBERT MCGAFFEY, APPELLANT, V. LLOYD BLOSSER, APPEL-
LEE.

FILED JULY 2, 1935. NO. 29275.

*McNeny & Sprague*, for appellant.

*Ziegler & Dunn* and *J. W. Boyd, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY,
PAINE and CARTER, JJ.

EBERLY, J.

This is an appeal from a judgment rendered against the
plaintiff, in the district court for Nuckolls county, in an
action for damages arising from the collision of two auto-
mobiles on a well-lighted business and residence street in
the city of Superior about midnight on July 22, 1933.

It appears that one Gingrich, the owner of one of the
cars involved, together with Schlitt and plaintiff, McGaffey,
had started from Superior and gone to a dance some dis-
tance from that town in Gingrich's automobile. On ar-
rival of the party at the place of entertainment, Gingrich
and Schlitt went into the dance hall. McGaffey remained
in the car in which he had arrived. About thirty minutes
later Schlitt returned to the automobile, of which McGaffey
was then the sole occupant, and the latter then requested

Schlitt to drive him to Superior. This Schlitt then proceeded to do. After arrival at this city they were driving south on Commercial avenue or Main street, which is one of the principal business streets in Superior. It runs north and south. En route they crossed intersecting streets, Eighth, Seventh, and Sixth, and were continuing south to the intersection of Fifth street on their right side of the street when they crashed into defendant Blosser's parked car, and thereby the damages in suit were sustained. The Blosser car, at the time of the collision, was upon the street pavement, in front of defendant's home, at approximately the center of the block, within a few inches of the west curb. It had been raining immediately prior to the collision, and was still drizzling when it happened. The street was wet and the view of plaintiff and his companion was much obstructed by the moisture on the windshield of their car, which, together with the illumination of the street in its then wet condition, operated to produce glaring lights which were blinding in their effect. Defendant Blosser's car, involved in this suit, was a 1933 Chevrolet sedan, weighing about 3,000 pounds, and having a width over all of 5 feet, 9 inches. As it was parked it was within a few inches of the west curb, and more than 15 feet upon the main traveled highway opposite such standing vehicle was left for free passage of other vehicles thereon. It was also provided with two Gladd reflectors, one in each rear fender, the same being standard equipment of Chevrolet cars of that model. At the time of leaving his car, after parking it, defendant had put it "in reverse" and it was still in reverse at the time of the accident. But all of its lights had been turned off, and there was no red tail-light showing at the moment of impact, save and except as created by the reflectors referred to. At the intersection of Fifth street and Commercial avenue, south of the place where the collision occurred, there was an electrolier which had 250-watt light bulbs; at the intersection on the north of Blosser's home at Sixth street and Commercial avenue, there was a street light containing

a 125-watt bulb; the principal hotel of the city was located at the corner of Fifth street and Commercial avenue, and across the street from the hotel was a filling station having lights in front thereof; also, on the same street between Fifth and Sixth there were two churches.

Both plaintiff and the driver of his car had practically spent their entire lives in Superior, and plaintiff testified that he knew that it was the custom, at various times, to park cars on both sides of Commercial avenue, and it appears that he was an experienced driver. The uncontradicted evidence is that the scene of the collision was well lighted at the time the accident occurred. A disinterested witness testified that he heard the impact, and saw, from his bedroom window, a distance of 85 feet, the plaintiff in the middle of the street, and saw the roadster, from which plaintiff had been thrown, as it came to a stop. Another witness, "sitting in her car" in front of the Nebraskan hotel, more than 200 feet away, was able to see the approaching car in which plaintiff was riding, and to observe his movements after the collision. A mail carrier, who lived on Commercial avenue just north of the Fifth street intersection, testifies as to the lighting of Commercial avenue at the scene of the accident, and states that objects were visible that night on that street from his residence as far as the north end of the block in which the Blosser residence was located.

Plaintiff definitely predicates his right of recovery on the absence of rear red lights showing on the Blosser parked car at the time of the collision. In support of this contention, section 5 of the Municipal Code of the city of Superior, Nebraska, was introduced in evidence, reading as follows:

"Lights, Brakes, etc. Every motor vehicle while in use on the streets of this city shall be provided with good and sufficient brakes, and also with a suitable bell, horn, or other signal, and shall show exhibited during the period from one (1) hour after sunset to one (1) hour before sunrise, one lamp on motorcycles and two or more lamps

on four (4) wheeled motor vehicles showing white lights visible within a reasonable distance from the direction towards which such vehicle is proceeding, and a red light from the reverse direction."

In his brief appellant states his position as follows: "Leaving an unlighted vehicle on a highway, on a dark night without warning, constitutes gross negligence within the comparative negligence statute." The above is the holding in *Monasmith v. Cosden Oil Co.*, 124 Neb. 327.

It will be observed that the author of the opinion in the *Monasmith* case cites as controlling authority the case of *Giles v. Welsh*, 122 Neb. 164. In the *Giles* case the accident occurred on a dark, misty night on an unlighted county road. As a reason for the decision announced in the *Giles* case, this court stated: "They had a right to assume that there would be no motor vehicle without a tail-light upon the highway."

In the instant case the undisputed evidence justifies the conclusion that the place of the accident was well lighted, from which the fair range of vision extended more than 200 feet both north and south along Commercial avenue.

Then, too, both the *Monasmith* and the *Giles* cases were determined with direct reference to the statute then in force, providing: "Every motor vehicle while in use on public highways * * * shall have exhibited during the period from one hour after sunset to one hour before sunrise * * * two lamps on four-wheeled motor vehicles showing white lights visible, within a reasonable distance, from the direction in which such vehicle is proceeding, and a red light visible from the reverse direction." Comp. St. 1929, sec. 39-1105.

In both of the cases just referred to, the trucks causing the collisions were, at the time of the accidents, in actual use, and in charge of their drivers. They had been proceeding over the highways and had become temporarily "stalled," and stopped on the traveled portion of unlighted, public highways on dark nights, without exhibiting any of the lights required by the statutes then in force. Obvious-

ly, in view of the surrounding circumstances, and the express requirements of our legislation then in force, actionable negligence was evidenced.

But the legislature of 1931 enacted chapter 110 of the laws of that year for the purpose of securing, in part at least, uniformity in the state laws regulating the operation of motor vehicles on the highways throughout the nation, which this court has determined should be construed in the light of the cardinal principles of the act itself to give effect to this design. *Bainter v. Appel*, 124 Neb. 40.

By the terms of chapter 110, Laws 1931, section 39-1105, Comp. St. 1929, as hereinbefore quoted, was expressly repealed. In lieu thereof, section 43, ch. 110, Laws 1931, was enacted, in the following terms:

"(a) Every motor vehicle upon a highway within this state during the period from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of two hundred feet ahead, *shall be equipped with lighted front and rear lamps as in this section respectively required for different classes of vehicles and subject to exemption with reference to lights on parked vehicles as declared in section 51.* (b) *Every motor vehicle* other than a motorcycle, roadroller, road machinery, or farm tractor *shall be equipped with two head lamps, no more and no less, at the front of and on opposite sides of the motor vehicle, which head lamps shall comply with the requirements and limitations set forth in section 45 or section 46* and except as to acetylene head lamps shall be of a type which has been approved by the department. (c) Every motorcycle shall be equipped with at least one and not more than two head lamps which shall comply with the requirements and limitations set forth in section 45 or section 46 and except as to acetylene head lamps shall be of a type which has been approved by the department. (d) *Every bicycle shall be equipped with a lighted lamp on the front thereof visible under normal atmospheric conditions from a distance of at least three hun-*

*dred feet in front of such bicycle and shall also be equipped with a reflex mirror or lamp on the rear exhibiting a red light visible under like conditions from a distance of at least two hundred feet to the rear of such bicycle.*" (Italics ours.) Comp. St. Supp. 1933, sec. 39-1174.

Section 51, referred to above in this language, viz., "subject to exemption with reference to lights on parked vehicles as declared in," is as follows:

"Local authorities in their respective jurisdictions may cause appropriate signs to be erected and maintained, designating residence and business districts, highway and steam interurban railway grade crossings and such other signs as may be deemed necessary to carry out the provisions of this act, and such additional signs as may be appropriate to give notice of local parking and other special regulations. Local parking and other special regulations shall not be enforceable against an alleged violator if, at the time and place of the alleged violation, an appropriate sign giving notice thereof, is not in proper position and sufficiently legible to be seen by an ordinarily observant person." Comp. St. Supp. 1933, sec. 39-1182.

A careful reading of the foregoing discloses that that which is strictly enjoined is, "Every motor vehicle (including automobiles) * * * shall be equipped with two head lamps;" and none of the "different classes of vehicles" save bicycles alone is required to be equipped "with a * * * lamp on the rear exhibiting a red light," etc. So, by statute, the legislature has seen fit to remove the requirement of a red tail-light for an automobile, and thus none was required by state law at the time the accident in suit occurred. Obviously, a cause of action based on an alleged failure to conform to a provision of the statute cannot be maintained when the provision itself has been repealed. Therefore, in view of the undisputed facts established in the present record, and the changes in the law effected by new legislation, including the express repeal of the old, it is thought that the doctrine announced in *Monasmith v. Cosden Oil Co., supra,* was not here applicable and controlling.

Bearing in mind that the legislative intent evidenced in the adoption of the uniform motor vehicle act regulating the operation of vehicles was, in part at least, to assure the safety and protection of the sojourner and the stranger within our gates from the dangers of incurring penalties for unwitting violations of unknown laws and regulations, and where the terms of the state enactment cover the subject of proper motor vehicle equipment, and proper parking and use of highway, both within and without municipalities, it would seem that the strict enforcement of section 5 of the Municipal Code of Superior as applicable and controlling in the instant case would be inconsistent with the clear legislative intent of our uniform motor vehicle act. Can it be said that a municipality may require the use of a red tail-light in parking an automobile which is not prescribed by state law as a proper equipment of the vehicle parked? Section 5 of the Municipal Code of Superior, if applicable to the present case, must be construed as a "local parking regulation." The requirements of section 43, ch. 110, Laws 1931, are expressly made "subject to exemption with reference to lights on parked vehicles as declared in section 51" already quoted. In turn, section 51 expressly limits "local authorities," which we understand to include municipalities, in the enforcement of local parking regulations by an express condition that "local parking and other special regulations shall not be enforceable against an alleged violator if, at the time and place of the alleged violation, an appropriate sign giving notice thereof, is not in proper position and sufficiently legible to be seen by an ordinarily observant person." There is not the slightest evidence of compliance with this requirement, even if the validity of section 5 of the Municipal Code of Superior be assumed.

But even if section 5 of the Municipal Code of Superior, hereinbefore quoted, be construed wholly independently of the statute, it is thought that its provisions are insufficient to support plaintiff's cause of action. Section 6, ch. 3 of the Municipal Code of Superior, relates solely to the regu-

lations for automobile parking on the streets of Superior. The defendant appears to have substantially conformed to all the requirements of section 6, but it does not express a requirement that the automobile lamps shall be lighted when the automobile is parked. Section 6 and section 5 of this ordinance must be construed together with due consideration to the subject of each. So interpreted, the words of section 5, viz., "every motor vehicle while in use on the streets of this city," and "showing white lights visible within a reasonable distance from the direction towards which such vehicle is proceeding, and a red light from the reverse direction," manifestly limit their application to an automobile "while in use" and then "proceeding" —an automobile in motion. It necessarily would have no application to an automobile parked for the night or longer on the public street, in strict conformity with the provisions of section 6, left unattended and not in present use. This conclusion is supported by the reasoning of the following cases: *City of Harlan v. Kraschel,* 164 Ia. 667; *Griffin v. McNeil,* 198 Ia. 1359; *Leete v. Hays,* 211 Ia. 379; *State v. Bixby,* 91 Vt. 287; *Coca Cola Bottling Co. v. Shipp,* 174 Ark. 130; *Musgrave v. Studebaker Bros. Co.,* 48 Utah, 410; *Commonwealth v. Keister,* 26 Pa. Dist. Rep. 922.

Therefore, in view of the admitted facts of the record before us, in the light of the statutory provisions discussed, we are constrained to the view that no sufficient evidence exists to sustain or support a judgment against the defendant. It follows that the trial court committed no error in overruling plaintiff's motion for a new trial and entering judgment upon the verdict returned.

The judgment is

AFFIRMED.